UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE BRANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02129-TWP-CSW |
| | ) |
| KA OF CARMEL WESTFIELD LLC d/b/a | ) |
| KIDDIE ACADEMY OF CARMEL | ) |
| WESTFIELD, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant, KA of Carmel Westfield LLC d/b/a/ Kiddie Academy of Carmel Westfield's ("KACW") Motion for Summary Judgment (Filing No. 57). Following Plaintiff Michelle Brannon's ("Brannon") termination from KACW, she initiated this action alleging violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Age Discrimination in Employment Act ("ADEA"). For the following reasons, KACW's Motion is **granted in part and denied in part**.

### I. BACKGROUND

The facts stated below are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, they are presented in the light most favorable to Brannon as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Brannon, an African American woman born in 1975, holds a bachelor's degree in human development and family studies and a master's degree in elementary education (Filing No. 62-5 at 3). She has over 25 years of experience working with children and families and was the owner of a daycare center for 18 years. *Id.* at 1-3. Due to her experience in the childcare field, KACW

hired Brannon to be their Childcare Director in August 2021 (Filing No. 57-3; Filing No. 57-4 ¶ 6). She was the highest paid employee at KACW (Filing No. 57-4 ¶ 6). At the time Brannon was hired, KACW also employed Kaytlynn Murphy ("Murphy") and Nicole Cabada ("Cabada") who were referred to as "directors" of various aspects of the school. *Id.* ¶ 5.

A.  **Brannon's Job Responsibilities**

As Director of KACW, Brannon was responsible for Human Resources, which included training, evaluating, and administrative onboarding/termination of employees. *Id.* ¶ 8. Brannon was also responsible for submitting the employees' hours bi-weekly for payroll, preparing the budgets, maintaining student and staff files to ensure compliance, and providing Procare updates and verifying information, enrollments, and billing. *Id.* Brannon was responsible for overseeing and ensuring compliance with inspections for the Indiana Family and Social Services Administration, the Fire Marshall, and KACW. *Id.* at ¶ 8. Organization of the student and staff files were of particular importance as KACW was operating under a provisional license. *Id.* ¶ 14. To move from a provisional license to a permanent license, KACW was required to pass all state compliance inspections.

All employees of KACW are required to be in the classroom at times to ensure proper student-teacher ratios, particularly during the Covid-19 pandemic when employees were in and out frequently (Filing No. 57-4 ¶ 11; Filing No. 57-7 ¶ 4; Filing No. 57-8 ¶ 5). This included Brannon, Cabada, Murphy, and Luciana "Lucy" Madsen ("Madsen"), co-owner of the school (Filing No. 57-8 ¶ 5). Although Madsen indicates if student-teacher ratios were sufficient, Brannon would be the first to leave the classroom and return to administrative duties, *Id.* ¶ 6; Brannon was in the classroom 90% of the time to maintain the correct teacher-to student ratios, while Murphy was only in the classroom, 50% of the time. (Filing No. 62-2 at 149-151).

2

B.     **Brannon's Performance**

Madsen never had any problems with Brannon personally (Filing No. 62-2 at 27:6-19). In conversations, Madsen told Brannon that she hired her for her experience and that she was doing a great job. *Id*. at 99:12-18, 161:14-22. Madsen encouraged her to continue doing good work. *Id*.

Brannon had difficulties using the version of ADP which KACW used for its payroll. Although she used ADP ten years prior to working at KACW, the version of ADP used to run payroll at KACW differed (Filing No. 62-2 at 38:3-20). Brannon had discussions about ADP with Murphy, Cabada, Madsen, and Toledo (Filing No. 62-2 at 42:18-25). However, Murphy, Cabada, Madsen, and Toledo all relayed different information or gave her partial information (Filing No. 62-2 at 39:16). Brannon was unable to teach herself how to use ADP because KACW did not provide any online payroll training courses on ADP. (*see* Filing No. 62-12). The lack of appropriate training caused Brannon to make payroll errors. (Filing No. 62-2 at 135-136). For example, in early September 2021, she ran payroll without proper training and consequently, five employees were not paid, and one employee was paid at the incorrect rate. Brannon scheduled a meeting for Madsen to teach her all aspects of ADP, but Madsen failed to show up. *Id*. When she followed up following the missed meeting, Madsen instructed her to get the training from Cabada, but Cadada only trained her on select sections of ADP, claiming she did not know how to work the other sections. *Id*.

KACW considers Brannon's work performance dissatisfactory in numerous respects (Filing No. 57-4 ¶ 14). The following is a non-exclusive list of errors Madsen contends that Brannon made in the two months she was employed at KACW:

- [Brannon] made numerous mistakes with respect to payroll - including missing hours and submitting checks to former employees - even after receiving the requisite payroll training and continued counseling from [Madsen], Murphy, Cabada and TCF Schools Management associate Estela "Satie" Toledo

> [("Toledo")]. After numerous issues, [Madsen] took over payroll, to ensure it was performed correctly.
>
> - [Brannon] took action which exceeded her authority, including giving an employee an unauthorized raise just two weeks into her employment and less than one month into the employee's employment.
>
> - [Brannon] exhibited very poor organizational skills with respect to personnel files. This organization was of particular importance as KACW was operating under a provisional license at the time of Brannon's employment and could not get a permanent license until it passed the State's inspection and showed full compliance with all applicable regulations. These files were subject to examination to obtain the full license.
>
> - [Brannon] was late to open the school on at least two occasions, leaving parents waiting outside for 30 minutes. On September 28, 2021, [Madsen] documented [] Brannon's tardiness, but [she] decided to have a verbal conversation with [] Brannon about this issue rather than to deliver the Corrective Action Documentation to her.
>
> - [Brannon] failed to properly advise a family on how to extend their child's scholarship, resulting in the school only receiving partial tuition for the child. The parents contacted Brannon for weeks, but she failed to respond. Murphy ultimately assisted the parents after they threatened to withdraw the child.

*Id.*

KACW contends that Brannon was never denied access to the ADP trainings, and they provided all the necessary training for childcare employees, and the necessary training for Brannon's administrative position and specific training for her role as Director (Filing No. 57-4 ¶ 15, ¶ 16). Brannon was encouraged to ask for help and call the support staff in Florida as much as she needed but did not often take advantage of these opportunities. *Id.* ¶ 17. At the time of her termination, most of Brannon's assigned Pro Solution Training courses remained incomplete (Filing No. 57-13).

On September 9, 2021, KACW failed its state inspection (Filing No. 57-14). The inspection found eleven different violations, seven of which were for lack of appropriate documentation within the employee files. *See id*. Brannon testified that she checked the employee

files "maybe one time" (Filing No. 62-2 at 70:19-71:3). It was important for the school to not receive any violations (Filing No. 62-3 at 46:7-13). The school needed to be in compliance with all the rules of the state to have a license. *Id.* KAWC asserts that Brannon's lack of organizational skills caused the failed inspection.

**C.     Brannon's Termination**

By October 2021, KACW was experiencing financial difficulties (Filing No. 57-4 ¶ 26). KACW made the decision to terminate one director, Brannon, due to the financial state of the school and her poor work performance. *Id.* ¶ 31. Brannon and Murphy both possessed the appropriate credentials to serve as KACW's primary director. *Id.* ¶ 7. KACW decided to terminate Brannon because only one director is required by state law, and Brannon was the lower performing, and higher earning, of the two qualified individuals. *Id.* ¶ 27.

KACW's Board of Directors discuss all employee terminations. *Id.* ¶ 28. Particularly, KACW's Chief Executive Officer, Maurício Fraçon ("Fraçon"), must give his approval before employees are terminated. *Id.* Madsen was the only member of KACW's Board of Directors who was present at the school on a daily basis, and recommended Brannon's termination due to the financial state of the school as well as her poor work performance. *Id.* ¶ 29. Fraçon approved the termination, based upon her recommendation. *Id.*

> Brannon's termination letter states:
>
> This letter is to inform you that your employment with Kiddie Academy of Carmel Westfield, LLC will end as of October 28th, 2021. We have concluded we must reduce our workforce. We are regretful to say your position is a part of this reduction. This decision is final. You will receive a final paycheck next week, with 15 days of extra payment. Please accept our appreciation for your contributions during your employment with Kiddie Academy.

(Filing No. 62-13).

### D. Brannon's Allegations

Brannon asserts that she was terminated due to her age and race and that she was subjected to a hostile work environment (*see generally* Filing No. 1). Brannon's primary contention is that due to her age and race she was denied appropriate training and her job duties were taken away and given to Murphy and Cabada, two younger, non-African American women (Filing No. 57-12 at 13:7-25). Brannon has also identified three statements made by KACW employees to support her claims of discrimination and hostile work environment on the basis of age and race:

- Murphy asked her "what is that language black people use?" to which Brannon responded, "you might want to look it up. I told her that's racist." (Filing No. 62-2 at 92:8-20).

- Murphy also told Brannon that she wanted to prepare Brannon because they were getting rid of her because she was not a good look for the school. (Filing No. 62-2 at 95:20-25; 96:1-6). When Brannon inquired "what do you mean not a good look?" Murphy responded, "because you're black." *Id*. Brannon spoke to Cabada about the comments and Cabada told her that was not true. *Id*. at 97:4-7. Brannon also spoke to Madsen, and her response was "just ignore her…you're doing a really good job," and she was not going to be terminated because of her race as Murphy had suggested *Id*. at 62-2 at 99:14-18.

- In or around October 2021, Cabada ushered Brannon out of a classroom, telling her that one of the parents had a problem with her being in the classroom because she was black. When she reported the incident to Madsen, she was informed that Cabada and Murphy were "having difficulty" working with an older, African American woman. *Id*. at 12:13-19.

Murphy and Madsen deny making any of the reported comments (Filing No. 57-8 ¶¶ 7, 9, 10; Filing No. 57-4 ¶ 21). Madsen contends that Brannon never reported either of Murphy's

alleged comments to her ([Filing No. 57-4](#) ¶¶ 13, 19, 20). Madsen recalls one conversation with Brannon in which they both discussed ways that they, as women with more experience in the childcare field, could support and encourage Murphy and Cabada's professional development. *Id.* ¶ 22. Madsen describes the conversation as friendly and states race was not discussed. *Id*. Madsen contends that neither the age nor race of Brannon played a role in KACW's decision to terminate Brannon. *Id.* ¶ 31.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, at 584. "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted). Additionally, the court is not "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes. *Id.* (citation and quotation marks omitted); *see Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021).

### III. DISCUSSION

Brannon asserts that KACW terminated her employment because of her race (Black) and age (forty-nine), after which she was replaced by a younger, non-African American employee. She asserts in Counts I, III, and V that KACW violated Title VII by discriminating against her on the basis of race, retaliating against her, and subjecting her to a hostile work environment (Filing No. 1 at 4). She asserts in Counts II, IV, and VI that the alleged discrimination, retaliation, and hostile work environment also violated Section 1981. In Counts VII, VIII, and IX, Brannon asserts that KACW violated the ADEA by discriminating and retaliating against her and subjecting her to a hostile work environment due to her age.

### A. Race Discrimination Claims

Title VII prohibits employers from discriminating against their employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C § 2000e-2(a). Similarly, Section 1981 provides that, "All persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981.

The legal analysis for discrimination claims under Title VII and Section 1981 is largely identical. *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). "Race discrimination claims under Title VII simply require that race be a 'motivating factor in the defendant's challenged employment decision.'" *Id.* (internal quotations omitted). For a Section 1981 claim, however, a plaintiff must show that her race was a but-for cause of her termination. *Id.* Because the analysis for both Title VII and Section 1981 is identical, cases interpreting either provision are instructive. *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019). Accordingly, Brannon's Title VII and Section 1981 discrimination claims will be analyzed together.

A plaintiff may prove discrimination by using either the direct method or the indirect, burden shifting method. *Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). But regardless of how one chooses to proceed, at summary judgment, courts ask whether the evidence "would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). This evidence must be considered as a whole instead of asking whether any piece of evidence proves the claim by itself. *Id.*

1. **Direct Method**

Under the direct method, a plaintiff must offer direct or circumstantial evidence that supports an inference of intentional discrimination. Direct evidence requires "an admission of discriminatory intent." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Circumstantial evidence typically includes "(1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not

9

rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Alexander*, 739 F.3d at 979.

KACW argues Brannon's only allegations which could possibly be considered direct evidence of a discriminatory intent motivating her termination are the three alleged statements made by Murphy and Madsen (Filing No. 57-1 at 11). In her discussion, Brannon does not focus on the direct method, rather she uses the racially motivated statements as evidence of her engaging in a statutorily protected activity for her retaliation claims (*see* Filing No. 62 at 19). Thus, the Court will assess Brannon's claims using the indirect method.

2.      **Indirect Method**

Under the indirect method, Brannon utilizes the burden-shifting framework outlined in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Courts employ this burden-shifting analysis as a means of "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Under the familiar *McDonnell Douglas* burden-shifting method, a plaintiff must first prove (1) that she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action, and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *Fane v. Locke Reynolds LLP*, 480 F.3d 534, 538 (7th Cir. 2007). If the plaintiff demonstrates these elements, "the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). "If the employer does this, then the burden shifts back to the plaintiff

to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

The Court agrees that Brannon has established the first and third elements of the *prima facie* standard for establishing discrimination on summary judgment. Brannon has established, and KACW does not dispute, that she is African American and a member of a protected class. Brannon also submitted undisputed evidence that she suffered an adverse employment action – her termination. The remaining issues that the parties dispute are whether Brannon was meeting KACW's legitimate expectations and whether KACW treated similarly situated white employees more favorably.

### a. **Legitimate Expectations**

To meet the second element of a *prima facie* case, Brannon must establish that she was performing her job to KACW's legitimate expectations at the time of the adverse employment action. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328–29 (7th Cir. 2002). Brannon worked for KACW for less than three months. She argues that she was meeting legitimate expectations as evidenced by Madsen praising her performance by telling her she was doing a great job and encouraging her to keep up the good work (Filing No. 62 at 12; Filing No. 62-3 at 27:14-19). Moreover, she did not receive any discipline while working for KACW and Madsen testified in her deposition that she had no issues with Ms. Brannon. At the time of Brannon's termination, Madsen thanked Brannon for her contributions. Brannon's termination notice made no mention of her work performance, rather it stated that "we must reduce our workforce" and "please accept our appreciation for your contributions during your employment with Kiddie Academy." (Filing No. 62-13.)

KACW argues that Brannon was not meeting legitimate expectations for several reasons (Filing No. 57-1 at 14). They argue the designated evidence shows that Brannon was unable to

11

maintain the filing and records the school needed to obtain permanent credentials (*see* Filing No. 57-14). On September 9, 2021, the State of Indiana listed eleven ways KACW was non-compliant with Indiana childcare regulations. *Id.* KACW argues that Brannon, as the Director, was responsible for each non-compliance. *Id.* Madsen also contends that Brannon had issues with punctuality (Filing No. 62-3 at 27:6-13). On one instance, Brannon arrived to work approximately two-and-a-half hours late, leaving parents and students waiting outside (*see* Filing No. 57-11). KAWC also argues that Brannon was not meeting expectations concerning her mistakes with payroll. Brannon forgot to pay five employees and paid one employee at a rate that was 50.00 dollars more than their standard rate (Filing No. 62-10). They argue that Brannon also failed to properly advise a family on how to extend their child's scholarship, resulting in the school only receiving partial tuition for the child (Filing No. 57-4 ¶ 14(e)).

Brannon does not dispute that she made payroll errors, (Filing No. 62-2 at 129:15-130:3), but states it was because she had not received the proper training. Brannon further argues that KACW has applied its legitimate expectations and disciplinary policy in a discriminatory manner, and thus the Court should merge the second and fourth prongs of the *prima facie* test and its analysis should go directly to pretext (Filing No. 62 at 12).

KACW relies on *Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999), and argues that Brannon is misinterpreting Seventh Circuit case law (Filing No. 69 at 5). KACW contends courts may only assume that a plaintiff has made a *prima facie* claim where the sole dispute is whether plaintiff was meeting legitimate expectations and *both* parties frame the case in terms of pretext. *Id. Vakharia* does not stand for that blanket proposition. But courts are encouraged to apply the *McDonnell Douglas* test flexibly. *See Flores v. Preferred Tech. Grp.*, 182 F.3d 512, 515 (7th Cir. 1999). When an employee argues that an employer applied its legitimate

expectations in a discriminatory manner, it makes little sense to discuss whether that employee was meeting her employer's legitimate expectations. *Curry v. Menard, Inc.*, 270 F.3d 473, 477-78 (7th Cir. 2001); *see also Cox v. Coca-Cola*, 191 F. Supp. 3d 909, 918 (S.D. Ind. 2016). Accordingly, Brannon's admissions regarding her payroll errors are not fatal to her *prima facie* case.

### b. Treatment of Similarly Situated Employees

We therefore turn to the last element of the *prima facie* test. Usually, to meet the fourth element of a *prima facie* case, a plaintiff must establish that she was treated less favorably than a "similarly situated" employee outside of her protected class. *Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008). However, in a mini-reduction-in-force case, where the dismissed employee's duties are absorbed by another employee or employees rather than eliminated, the court applies a modified version of the fourth prong. *Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 725 (7th Cir. 2008). This variation simply requires proof that the plaintiff's duties were absorbed by employees not in the protected class. *Id.*

In her deposition, Madsen attested that Brannon was terminated in part, because of errors in her work. Brannon's termination notice, however, states "[KACW has] concluded we must reduce our workforce. We are regretful to say your position is part of this reduction. This decision is final." (Filing No. 62-13.) This termination notice, coupled with KACW's admission, is evidence of a reduction-in-force scenario. It is undisputed that Brannon's duties were taken over by Murphy, a white woman (Filing No. 57-4 ¶ 30; Filing No. 62-3 at 42:14-16). Therefore, Brannon has established a *prima facie* case of race discrimination under Title VII and Section 1981.

### c. Legitimate Non-Discriminatory Reason

Because Brannon has established a *prima facie* case, the burden shifts to KACW to present a legitimate, nondiscriminatory reason for terminating her. To satisfy its burden KACW need only "produce a legitimate, noninvidious reason for its actions." *Stone v. City of Indianapolis Pub. Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002). Economic difficulties in the industry are a legitimate, non-discriminatory reason for a reduction in force. *Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1043-44 (7th Cir. 2000). KACW states that in 2021 they operated at a significant financial loss and because Brannon was the lower performing, and higher earning, of the directors she was terminated because only one director was required by state law (Filing No. 57-4 ¶¶ 26, 27). KACW also provides evidence of Brannon's multiple performance errors. The Court agrees that KACW's proffered reasons for Brannon's termination – poor performance and financial difficulties – satisfies this burden.

### d. Pretext

Since KACW has proffered a legitimate, non-discriminatory reason for terminating Brannon's employment, in order to survive summary judgment, Brannon must produce evidence to raise an inference that KACW's stated reason is pretext for discrimination. Pretext means "a fabrication, designed to conceal an unlawful reason;" it is "something worse than a business error," where "deceit [is] used to cover one's tracks." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). To demonstrate pretext, a plaintiff can present evidence showing that: (1) the defendant was "more likely than not motivated by a discriminatory reason;" or (2) the defendant's stated reason is not credible. *Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001).

Brannon argues that she has presented sufficient facts to prove the reason KACW provided for her termination is pretext. Brannon asserts that KACW has given shifting and inconsistent

reasons for her termination. Shifting or multiple reasons for an employment decision can raise a genuine issue of material fact as to pretext. *O'Connor v. DePaul Univ.*, 123 F.3d 665, 671 (7th Cir. 1997). Initially, Brannon was told she was being terminated due to a reduction in force (Filing No. 62-13). That explanation was supported by the fact she would receive 15 days of extra payment with her final paycheck. *Id.* Then, when Brannon inquired about her termination in December, Fraçon informed her that "Indiana is employment-at-will." Brannon's termination letter mentioned only a reduction in workforce as the reasons for her termination. October 2023 was the first time KACW cited Brannon's performance issues as the reason for her termination.

Brannon also contends that KACW's poor performance explanation has no basis in fact. Brannon submits her deposition testimony to refute the testimony of Madsen, Murphy, Cabada, and the documents submitted by KACW. Brannon argues that she never gave an employee a raise without prior approval and was never late to work (Filing No. 62-2 at 57:13-19). Brannon also submits evidence showing that she was unable to complete the tasks of the Director as she was often in the classroom. When viewing the evidence in the light most favorable to Brannon, as required at this stage, her deposition testimony gives rise to a genuine dispute of material fact as to her performance issues.

Lastly, Brannon has designated evidence that suggests her alleged performance issues were not the real reason for her termination. Brannon was told she was not a "good look" for KACW because of her race (Filing No. 62-2 at 97:1-98:18, Filing No. 62-2 at 161:7-10). Brannon also reported racist comments made by Murphy (*id.* at 92:7-20). Madsen responded that Murphy and Cabada only had issues with her because she was Black (*id.* at 93:20-21; *id.* at 93:22-94:4). Madsen told Brannon to ignore all comments and that she was not going to be terminated because of her race as Murphy had suggested. Yet, Brannon was fired two months later.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitle to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). Here, there are genuine disputes as to material facts. Brannon has designated enough evidence to suggest KACW's alleged reason for her termination is pretext. Accordingly, summary judgment on Brannon's race discrimination claims is **denied**.

### B.     Age Discrimination (Count VII)

Brannon also claims that her termination was due to age discrimination. The ADEA prohibits an employer from "discriminating against any individual with respect to [her] compensation, terms, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Gross v. FBL Financial Services*, 557 U.S. 167, 176-77 (2009) (holding that the ADEA only allows but-for, not mixed-motive, age discrimination claims).

Like race discrimination under Title VII, a plaintiff may show age discrimination by employing the *McDonnell Douglas* burden-shifting approach. The plaintiff alleging age discrimination must first set forth a *prima facie* case of age discrimination and, once achieved, the employer must articulate a non-discriminatory reason for the employment decision. The plaintiff then must present evidence that the reason proffered by the employer was pretextual. To establish a *prima facie* case of age discrimination, a plaintiff must show that: (1) she was over forty years of age; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated, substantially younger employees were treated more favorably. *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002).

Brannon has established, and KACW does not dispute, that she is over the age of forty. Brannon also presented undisputed evidence of an adverse employment action – her employment with KACW being terminated. However, the parties again dispute whether Brannon was meeting

16

legitimate expectations and whether similarly situated, substantially younger employees were treated more favorably.

Like in the race discrimination claim analysis above, Brannon has established a *prima facie* case of discrimination and KACW has established a legitimate, non-discriminatory reason for Brannon's termination. However, Brannon fails to establish that KACW's proffered reason for her termination was simply pretextual. Brannon does not designate material evidence that shows KACW was motivated to terminate her employment because of her age. Accordingly, summary judgment is **granted** in KACW's favor on Brannon's age discrimination claim.

C.     **Retaliation Claims**

Brannon also alleges that KACW retaliated against her. Employers are prohibited from retaliating against employees who oppose unlawful employment practices. To establish a claim for retaliation, Brannon may proceed under the direct method or the indirect method. Under the indirect method, Brannon must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two. *Hutt v. AbbVie Prod. LLC*, 757 F.3d 687, 693 (7th Cir. 2014); *Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785, 790 (7th Cir. 2001).

KACW contends that Brannon did not establish a *prima facie* case of retaliation because she cannot show that she engaged in a statutorily protected activity. An employee engages in a statutorily protected activity when: (1) she has a good faith belief that she is opposing a practice prohibited by statute, and (2) that belief is objectively reasonable. *Ferrill*, 860 F.3d at 501; *Hammer v. St. Vincent Hosp. & Health Care Center, Inc.*, 224 F.3d 701, 707 (7th Cir. 2000). KACW argues that Brannon never made any formal complaint of harassment or discrimination to Madsen – the only KACW worker with supervisory authority over her. However, Brannon states in her deposition testimony that she reported the discriminatory comments made by Murphy to Madsen

17

on two different occasions (*see* Filing No. 62-2 at 93:3-21; Filing No. 62-2 at 99:10-18). In reply, KACW argues Brannon's conversations with Madsen were merely a recount of conversations and because Brannon did not accuse anyone of race discrimination it does not qualify as her engaging in a protected activity (Filing No. 69 at 8). An employee need not use the magic words "race discrimination" to bring her speech within Title VII retaliation protections, she just has to say something to indicate her race is an issue. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003). On both occasions, Brannon connected Murphy's comments to her race. Therefore, Brannon's conversation with Madsen qualifies as her engaging in a protected activity.

In finding that Brannon engaged in a statutorily protected activity, the Court must now determine whether she suffered an adverse employment action and if there was a causal connection between her statutorily protected activity and her termination. Brannon has established, and KACW does not dispute, that she suffered an adverse employment action when she was terminated. However, the parties dispute whether Brannon has satisfied the causal connection element.

An employee can show causation by showing that engaging in a protected activity was the "substantial or motivating factor" in the employer's decision to terminate them. This may be done through direct evidence of retaliation or circumstantial evidence. Brannon claims the causal connection between her protected activity and her termination is the "pretextual reasons" KACW provided. That is not enough. KACW allegedly terminating Brannon's employment for being Black is not the same as KACW terminating her employment for reporting comments made about her being Black. Brannon must show that KACW terminated her for reporting the racist comments and she has failed to do so. Accordingly, summary judgment is **granted** in KACW's favor on Brannon's retaliation claims.

18

### D. Hostile Work Environment Claims

Brannon's Complaint brings claims for hostile work environment under Title VII, Section 1981, and the ADEA (Filing No. 1). *See Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022) (assuming, *without deciding*, that a hostile work environment claim can be brought under the ADEA). To assert a hostile work environment claim, a plaintiff must allege: (1) she was subject to unwelcome harassment; (2) the harassment was based on her protected characteristic; (3) the harassment was severe or pervasive so as to create a hostile or abusive working environment; and (4) there is basis for employer liability. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). KACW devotes a section of its summary judgment brief to discussing potential hostile work environment claims, and it argues – with support from legal authority – that Brannon does not establish a *prima facie* case (Filing No. 57-1 at 19-21). KACW also notes that Brannon failed to offer any argument as to why her hostile work environment claim should proceed (Filing No. 69 at 9).

It is well established that when a party fails to respond to an issue raised in a summary judgment motion or fails to raise the claim in the response brief, the issue or claim is deemed abandoned or waived. *Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003). Brannon's summary judgment response brief does not discuss severe or pervasive harassment, nor does it mention the words hostile work environment. Brannon has therefore waived her hostile work environment claims by failing to respond. Summary judgment is **granted** in favor of KACW on Brannon's hostile work environment claims.

### IV. CONCLUSION

For the reasons explained above, KACW's Motion for Summary Judgment (Filing No. 57) is **GRANTED in part and DENIED in part.** Summary judgment is **granted** as to Brannon's age discrimination claim, retaliation claims, and hostile work environment claim, and those claims are

**dismissed**. Summary judgment is **denied** as to Brannon's race discrimination claims. This matter will proceed to trial or settlement, on Counts I and II, Brannon's race discrimination claims under Title VII and Section 1981.

    **SO ORDERED.**

Date: 8/13/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Amber K. Boyd
AMBER K. BOYD LAW
amber@amberboydlaw.com

Deidra N Haynes
THE LAW OFFICE OF DEIDRA N. HAYNES LLC
deidrahaynes@dnhlawllc.com

Joseph A. Zumpano, III
REMINGER CO. LPA
jzumpano@reminger.com

Lyndsay I. Ignasiak
REMINGER CO. LPA (Indianapolis)
lignasiak@reminger.com